UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN L. BURKS,
       Plaintiff,

v.                                                                         Case No. 20-C-1210

CO SCHAEFFER BROESKE,
       Defendant.

## ORDER

Pro se plaintiff Kevin L. Burks filed this case alleging that his constitutional rights were violated when he was confined at the Milwaukee County Criminal Justice Facility. The plaintiff is proceeding on a constitutional failure-to-protect claim against the defendant, Correctional Officer Schaeffer Broeske. The plaintiff alleges that the defendant knew two inmates threatened to harm the plaintiff and yet opened the plaintiff's cell door to allow one of the inmates to give the plaintiff a broom. After giving the plaintiff the broom, the two inmates entered the plaintiff's cell and attacked him. Before me now are the parties' cross-motions for summary judgment.[1]

### I. BACKGROUND

On April 20, 2020, the plaintiff was an inmate at the Milwaukee County Jail/Criminal Justice Facility ("Jail") assigned to the General Population Housing, Unit 6B Cell 20. Def.'s

---

[1] The defendant has also filed a motion to strike plaintiff's motion to have the court consider additional legal authority. ECF No. 80. I have not considered the plaintiff's unauthorized sur-reply in resolving the summary judgment motions. I will therefore deny as moot the defendant's motion to strike.

Proposed Findings of Fact ("DPFOF"), ECF No. 35, ¶ 1. He was awaiting sentencing following a jury trial at which he was found guilty of eight felony counts. DPFOF ¶ 2.

The defendant was a correctional officer ("CO") at the Jail, and on April 20, 2020, he was assigned to work second shift in Unit 6B. DPFOF ¶¶ 3-4. The defendant was the only CO on duty in Unit 6B at 9:15 p.m. on April 20, 2020. DPFOF ¶ 5.

Inmates Vashon Bonds ("Bonds") and Rayshawn Williams ("Williams") were pod workers on Unit 6B. DPFOF ¶ 6. Inmate pod workers swept the floor, mopped the floor, and cleaned off the tables in the dayroom after it closed at 9:00 p.m. DPFOF ¶ 7.

**A. The Incident on Unit 6B on April 20, 2020**

On April 20, 2020, at about 9:15 p.m., Bonds was in the Unit 6B dayroom, near the plaintiff's cell door, with a mop and a broom, when he told the defendant that the plaintiff wanted a broom. DPFOF ¶¶ 16-17. Bonds, who stood two to three feet away from the plaintiff's cell door, told the defendant a second time that Cell 20, the plaintiff's cell, needed a broom. DPFOF ¶¶ 18-19. The defendant was sitting at his desk in the dayroom. DPFOF ¶ 20. The plaintiff testified that the defendant asked the plaintiff if he needed a broom, to which he responded, "I'm good," indicating he did not need the broom. Def.'s Reply to Pl.'s Resp. to DPFOF, ECF No. 74, ¶¶ 28-29; Burks Decl., ECF No. 32 at 3. The plaintiff saw the defendant stand up and start walking towards his cell with keys. DPFOF ¶ 23. When the defendant arrived at the cell, the plaintiff did not tell him to not open the door. DPFOF ¶ 24. The defendant unlocked and opened the plaintiff's cell door. DPFOF ¶ 21.

The defendant then watched Bonds hand the broom to the plaintiff. DPFOF ¶ 25. The plaintiff put the broom in the back of his cell. DPFOF ¶ 28. After Bonds gave the

2

plaintiff the broom, Williams walked over to Cell 20 and stood with Bonds. DPFOF ¶ 33. As the plaintiff put the broom in the back of his cell and returned to the doorway, Williams and Bonds were standing outside the doorway. DPFOF ¶ 34.

The defendant backed a few feet away from the plaintiff's cell door and watched the three inmates. DPFOF ¶ 36. The defendant states that, initially, the conversation between the three inmates appeared to be "casual" so he "backed away," as he had been trained to do. DPFOF ¶ 36. The plaintiff states that the conversation was contentious. According to the plaintiff, while in the doorway, Bonds asked the plaintiff why he "do[es] that bitch ass shit[?]" Burks Decl. at 3. The plaintiff told Bonds that he did not know what he was talking about. *Id.* Williams then asked Bonds if he wanted to run in on the plaintiff, which means to run in his room to fight him. *Id.*

It is undisputed that a few seconds after the defendant backed away from the cell door, the defendant heard the three inmates arguing and observed Bonds removing his shower slippers and socks. DPFOF ¶ 37. The defendant knew inmates often remove their socks when they are preparing to fight. DPFOF ¶ 38. The plaintiff, who also saw Bonds remove his footwear and knew this was a signal that Bonds was preparing to fight, did not call out to the defendant for help. DPFOF ¶¶ 39-40. Upon seeing Bonds remove his socks, the defendant quickly walked back to Cell 20 to secure the door. DPFOF ¶ 41. The defendant nudged or pushed Williams to the side in an effort to close the door, but Williams prevented him from doing so. DPFOF ¶ 42. Bonds and Williams entered the

3

plaintiff's cell, and the defendant immediately made a radio transmission to Master Control[2] to report a fight. DPFOF ¶ 44.

After the defendant called for back-up, he returned to his desk to extricate himself from the three inmates, as he was trained to do, and to unlock the Unit 6B door for the backup officers. DPFOF ¶¶ 9-10, 46. After the defendant's initial radio transmission to Master Control, he made more transmissions during the next minute stating, "[F]ight, step it up!" DPFOF ¶ 47. Backup officers arrived on the scene about one minute after Bonds and Williams entered the plaintiff's cell and broke up the fight. DPFOF ¶¶ 48-49. The plaintiff, Bonds, and Williams were handcuffed and removed from the pod. DPFOF ¶ 56. The plaintiff was medically evaluated by nursing staff and received treatment at the jail clinic. DPFOF ¶ 57. The plaintiff suffered a contusion to his face, head, back, and a hole in his upper lip. Burks Decl., ECF No. 32, at 3.

**B. The Parties' Disputes**

The parties dispute whether the defendant knew that Bonds and Williams were a threat to the plaintiff prior to his opening the cell door. According to the plaintiff, on April 20, 2020, he heard the defendant tell Bonds and Williams that the plaintiff tried to get them fired from their pod worker jobs, so that the plaintiff could replace them. Burks Decl., ECF No. 32 at 2. This upset both inmates, and they threatened to physically harm the plaintiff by saying, "I can't wait until morning to run in that nigga (Kevin Burks) room" and

---

[2] Master Control is an area in the Jail with access to cameras to all housing units. All calls for back-up are made into Master Control so that the officers can make the "all call" request and monitor that officers respond. DPFOF ¶ 12. Inmate fights in jail pods called in through Master Control are treated as emergencies at the Jail, and Jail staff are trained to respond as quickly as possible. DPFOF ¶ 13.

"I'm gonna beat that nigga ass!" *Id.* They also started to call the plaintiff a child molester and rapist. *Id.* The defendant told both inmates that he would never give the plaintiff their jobs because the plaintiff had a sexual assault to a child charge. *Id.* Bonds then stated in front of the officer station loudly that "he could not wait until the morning to run in that nigga (Kevin Burks) room." *Id.* The plaintiff states that the two inmates verbally threatened to physically harm him loudly enough that the defendant and other inmates heard them, and yet the defendant did not say or do anything. *Id.*; Declaration of Deon Staten, ECF No. 53, ¶ 5.

According to the defendant, he never perceived Bonds or Williams as a threat to the plaintiff before he opened the door on April 20, 2020. DPFOF ¶ 35. Nor did he hear Bonds or Williams threaten the plaintiff before he opened the door. DPFOF ¶ 51. He also states he did not hear or observe anything suggesting that Bonds or Williams intended to fight with the plaintiff until Bonds removed his socks. DPFOF ¶ 52. According to the defendant, he never spoke with Bonds or Williams about the nature of the plaintiff's criminal convictions. DPFOF ¶ 54. The defendant also states that he did not tell Bonds or Williams on April 20, 2020, that the plaintiff was trying to have them fired from their pod jobs or that the plaintiff wanted their jobs. DPFOF ¶ 55.

The parties also dispute whether the plaintiff asked the defendant for a broom before the incident. According to the defendant, after he came on duty in Unit 6B on April 20, 2020, the plaintiff asked him for a broom more than once prior to 9:15 p.m. DPFOF ¶ 15. The plaintiff denies that he asked the defendant for a broom prior to 9:15 p.m. Pl.'s Resp. to DPFOF, ECF No. 68, ¶ 15.

In addition, the parties dispute whether the plaintiff would have been permitted to use a broom to clean his cell at 9:15 p.m. The defendant states that when he was assigned to Unit 6B at the Jail, inmates were allowed to use the pod's broom or mop to clean their cells after the dayroom closed. DPFOF ¶ 8. The plaintiff disputes this and states that he was required to clean his cell before the dayroom opened. Pl. Resp. to DPFOF ¶ 8.

**C. The Investigation**

CO Gary A. Kohl was assigned to investigate the incident. DPFOF ¶ 58. CO Kohl's investigation included an interview with the plaintiff on April 28, 2020. DPFOF ¶ 62. During that interview, the plaintiff never mentioned that the defendant told Bonds or Williams that the plaintiff wanted their pod jobs or that the plaintiff was trying to get them fired. DPFOF ¶ 62. Nor did the plaintiff mentioned that the defendant told Bonds or Williams about the plaintiff's convictions. DPFOF ¶ 62. Following the investigation, Bonds and Williams were each charged with one count of battery by prisoner. DPFOF ¶ 64.

The plaintiff filed an inmate grievance regarding the incident that was determined to be unfounded. DPFOF ¶ 59. In the plaintiff's grievance, he never mentioned that the defendant told Bonds or Williams that the plaintiff wanted their pod jobs or that the plaintiff was trying to get them fired. DPFOF ¶ 60. Nor did he mention that the defendant informed Bonds or Williams of the plaintiff's conviction or that the convictions involved crimes against children. DPFOF ¶ 61. On appeal, it was determined that "CO Broeske did as he is trained, he makes the radio call and goes back to his desk to let staff in to assist." DPFOF ¶ 63.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Analysis

The plaintiff contends that the defendant failed to take reasonable measures to guarantee his safety. According to the plaintiff, the defendant was aware of and disregarded an excessive risk to the plaintiff's safety. The plaintiff contends that the defendant knew that Bonds and Williams threatened to harm the plaintiff yet opened the plaintiff's cell door to allow Bonds to give the plaintiff a broom that the plaintiff did not want and then walked away.

The defendant concedes that the plaintiff was exposed to serious harm because Bonds and Williams assaulted the plaintiff in his cell. The defendant contends, however, that the plaintiff cannot prove that the defendant knew about and disregarded an excessive risk to the plaintiff's safety. The defendant contends that he did not know that Bonds and Williams intended to fight the plaintiff until Bonds removed his socks. The defendant contends that, even if the plaintiff's "most recent and revised version of events"

is accepted for purposes of summary judgment, at most, the defendant's conduct could be deemed negligent.[3] ECF No. 34 at 15.

"Jail officials have a duty to protect inmates from violent assaults by other inmates." *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 669 (7th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1988)); *see also Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (applying duty to protect rule to pretrial detainees). Because the plaintiff had been convicted but not yet sentenced at the time of the incident, his constitutional claim arises under the Fourteenth Amendment, *see Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009), and is subject to the objective unreasonableness standard, *see Hardeman v. Curran*, 933 F.3d 816, 822-23 (7th Cir. 2019).[4]

To prevail on his claim, the plaintiff must prove the following: (1) "[t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "[t]hose conditions put the plaintiff at substantial risk of suffering serious

---

[3] The defendant states that the plaintiff's version of what happened on April 20, 2020, has been embellished over time, and the defendant's purported role has been altered and enlarged. The defendant points to the plaintiff's inmate grievance in which he did not mention that the defendant told Bonds and Williams that the plaintiff had tried to get them fired from their jobs or that the defendant told the inmates about the plaintiff's criminal conviction. The defendant also points to the plaintiff's complaint in this case where he alleged that he (the plaintiff) was the one who told Bonds and Williams that the defendant would never give him the job because he sexually assaulted a child. ECF No. 1 at 4. According to the plaintiff, his complaint mistakenly states that he told Bonds and Williams about his criminal conviction when, in fact, it was the defendant who told them. The plaintiff states that he simply made an error in writing "plaintiff" instead of "defendant." ECF No. 67 at 11.

[4] In the Screening Order, because the complaint did not allege that the plaintiff had not yet been sentenced, I applied the Eighth Amendment deliberate indifference standard applicable to convicted and sentenced prisoners to determine whether the plaintiff stated a failure to protect claim. It is now undisputed that the plaintiff had not been sentenced on April 20, 2020, so the Fourteenth Amendment standard is appropriate.

harm;" (3) the defendant's conduct was objectively unreasonable in that the officer "did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "[b]y not taking such measures, the defendant caused the plaintiff's injuries." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (cited with approval by *Hardeman*, F.3d at 823 and *Miranda v. Cty. of Lake*, 900 F.3d 335, 351, 354 (7th Cir. 2018)).

Importantly, a constitutional violation does not occur "every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Correctional facilities, "after all, are dangerous places often full of people who have demonstrated aggression." *Id.* Thus, "negligence" by correctional officials "is not enough." *Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2014) (citations omitted); *see also Miranda*, 900 F.3d at 353 ("[I]t will not be enough to show negligence or gross negligence.") (citations omitted).

The plaintiff has satisfied the first, second, and fourth factors of a Fourteenth Amendment claim because it is undisputed that the defendant intentionally opened the plaintiff's cell door, and that Bonds and Williams then entered the plaintiff's cell and assaulted him. The third factor—whether the defendant's conduct was objectively unreasonable—is disputed. The parties dispute whether the defendant told Bonds and Williams that the plaintiff tried to get them fired; whether defendant told Bonds and Williams about the nature of the plaintiff's criminal convictions; and whether Bonds and Williams threatened to harm the plaintiff in front of the defendant. The parties also dispute

9

whether the plaintiff had previously requested the broom that evening and whether the Jail's rules allowed the plaintiff to sweep and mop his cell after the dayroom closed.

The only factual dispute that is material is whether Bonds and Williams threatened to harm the plaintiff in front of the defendant. This material dispute precludes summary judgment for either party. On the one hand, a factfinder could credit the plaintiff's account and conclude that the defendant knew Bonds and Williams had recently threatened to harm the plaintiff. On these facts, a factfinder could find that the defendant acted unreasonably when he opened the door to allow Bonds to give the plaintiff a broom, further exacerbating the risk to the plaintiff. On the other hand, a factfinder could credit the defendant's account and conclude that the defendant did not know Bonds and Williams had threatened the plaintiff. On these facts, a factfinder could conclude that the defendant did not act unreasonably because he knew of no risk to abate.

**C. Qualified Immunity**

The defendant also contends that he is entitled to qualified immunity. To determine whether qualified immunity applies, I must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 F. App'x 773, 775 (7th Cir. 2018). Clearly established "means that, at the time of the [prison official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2017) (citations and internal quotations omitted).

The defendant contends that he is entitled to qualified immunity because he took reasonable measures to abate the risk to the plaintiff. This is a nonstarter because it assumes that the defendant did not know there was a risk to the plaintiff's safety until he

10

saw Bonds removing his footwear. As described above, the parties dispute whether the defendant was aware of a risk to the plaintiff's safety before the defendant opened the plaintiff's cell door.

Assuming the plaintiff's version of the incident is true, a reasonable officer would have known that opening the plaintiff's cell door to inmates who had threatened him violated one of the plaintiff's clearly established rights. *See Balsewicz v. Pawlyk*, 963 F.3d 650, 657 (7th Cir. 2020) (citing *Farmer*, 511 U.S. at 834); *Brown v. Budz*, 398 F.3d 904, 910-11 (7th Cir. 2005)); *see also Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005); *Gevas v. McLaughlin*, 798 F.3d 475, 485 (7th Cir. 2015).

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to strike plaintiff's motion to have the court consider additional legal authority (ECF No. 80) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that a Telephonic Status Conference will be held on **April 5, 2022 at 9:45 a.m.**

Dated at Milwaukee, Wisconsin, this 10th day of March, 2022.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge